In the Matter of the Application of the FIRST PRESBYTERIAN SOCIETY OF THE TOWN OF BUFFALO for Leave to sell its Real Estate.

Where a conveyance of land to a religious corporation is absolute, without condition or reservation, it creates no trust beyond the duty imposed by law upon the corporation of using its property for the purposes contemplated in its creation. Such a trust is not fastened upon the land, but the corporation may, with the judicial consent, sell and convey a good title, the proceeds in such case taking the place of the land.

As to whether, under the acts of 1875 and 1876 (Chap. 79, Laws of 1875 and Chap. 110, Laws of 1876), and under the "rules and usages" of the Presbyterian church of the United States, a church belonging to that denomination can sell its real estate without the precedent consent of the Presbytery, *quære*.

The Presbytery gave its consent to such a sale, provided it was "authorized by a vote of the congregation in public meeting assembled." The trustees of the church regularly called a meeting, at which of one hundred and thirty-seven members entitled to vote, eighty seven voted, and of these sixty-six voted in favor of a sale· twenty-four of those who did not vote signed a paper approving a sale. *Held*, that, conceding the consent of the Presbytery was necessary, the condition imposed by it was complied with and the sale was authorized.

Also, *held*, in the absence of proof that any lawful vote was excluded or unlawful one admitted, the want of a proper register did not invalidate the vote taken.

This court has no authority to review the determination of the court below as to the·propriety of such a sale.

(Argued June 7, 1887; decided June 14, 1887.)

APPEAL from order of the General Term of the Superior Court of Buffalo, made November 30, 1886, which affirmed

an order of Special Term giving to the petitioner authority to sell its real estate.

The facts, so far as material, are stated in the opinion.

*J. M. Humphrey* for appellant. In construing a conveyance of real estate, the court must carry into effect the intent of the parties to it as shown by the whole instrument, and for that purpose may take into consideration the circumstances connected with the making of it, viz: The consideration; the objects and purposes for which it was made, as understood by the grantor and grantee. (1 Statutes at Large, 699, § 2; *Parkes* v. *Parkes*, 9 Paige, 116; *Woodworth* v. *Payne*, 74 N. Y. 196; 4 Kent Com. 124; *Wilson* v. *Troup*, 2 Cow. 228, 234; *French* v. *Carhart*, 1 N. Y. 102; *Whallon* v. *Kaufman*, 19 J. R. 104; *Green* v. *Cummings*, 23 N. Y. Week. Dig. 282; *Williams* v. *Williams*, 8 N. Y. 532; *Saunders* v. *Hanes*, 44 id. 353; Willard's Eq. Jur. 47, 298, 299, 567; *Cunningham* v. *Cassidy*, 17 N. Y. 276; *Woodworth* v. *Payne*, 74 id. 196.) The trustees took the property subject to the condition on which the grantor made the conveyance, and a departure, therefore, forfeits it. (*Robertson* v. *Bullion*, 11 N. Y. 265.) The courts must accept and enforce the decisions and usages of the church in all matters falling within the control of the church government and tribunals, and not allow the church property to be deviated from its trust. (*Wasson* v. *Jones*, 13 Wall. 680; 3 Ed. Ch. R. 55; 16 B. 241; 2 Potter on Corporations, § 577; 5 Am. R. 415; 53 N. H. 9.) The security of the real estate of all religious incorporations requires a strict adherence to the statute. (*M. A. Bap. Ch.* v. *Bap. Church in O. St.*, 46 N. Y. 143.) The power of the court to make an order permitting a sale depends upon the grounds stated and facts proved to the court in support thereof. (*M. A. Bap. Church* v. *Oliver St. Bap. Church*, 73 N. Y. 82.) The court cannot direct, as an independent proposition, the application of the proceeds of the sale of the real estate. Its only means of accomplishing that result is its power not to give its assent to

a sale unless accompanied by such proposed application as shall seem to the court to be for the best interest of the society as an organization to continue for the purposes of its creation. ( *Wheaton* v. *Gates*, 18 N. Y. 402 ; *The Elders* v. *Dutch Church Saugerties*, 16 Barb. 237.) Religious corporations are peculiarly subject to the control of courts of equity, their trustees are simply trustees of trustees, and, therefore, should be and are peculiarly subject to such control. ( *Watkins* v. *Willcox*, 66 N. Y. 654; *Robertsom* v *Bullions*, 11 id. 243.)

*Spencer Clinton* for respondent. The order of the General Term is not appealable to this court, and the appeal should be dismissed. (Code of Civ. Pro. § 190 ; 2 R. S. [7th ed.] 11 ; *In re Marvin*, 11 N. Y. 276 ; *In re Dodd*, 27 id. 629 ; *Howell* v. *Mills*, 53 id. 323 ; *Livermore* v. *Bainbridge*, 56 id. 72 ; *In re Kings Co. El. R. Co.*, 82 id. 95.) · The society has the title to the property and can sell it. (3 R. S. [7th ed.] 2181, § 55 ; *Wetmore* v. *Parker*, 52 N. Y. 450 ; *Erwin* v. *Hurd*, 13 Abb. [N. C.] 92 ; *Trustees* v. *Bly*, 73 N. Y. 323, 327 ; *Robertson* v. *Bullions*, 9 Barb. 64, 102.) The objection that there was no registry of voters, is not tenable. (3 R. S. [7th ed.] 1579, § 7 ; 32 How. Pr. 335.) The will of the majority of the society must govern. (*Petty* v. *Tooker*, 21 N. Y. 267 ; *Dutch Church, Saugerties*, 16 Barb. 237.)

FINCH, J. Upon the petition of a majority of those who constitute the religious corporation, known and organized as the First Presbyterian Church of the town of Buffalo, the Supreme Court has made an order consenting to a sale of its real estate, and directing the proceeds to be applied to the purpose of providing such other place of worship as the society shall direct. On the appeal from this order four different reasons are submitted as furnishing just cause for a reversal.

It is first claimed that the property cannot be sold, and a good title to it cannot be given, by reason of a trust imposed upon it. The deed to the corporation is absolute and without

condition or reservation. It created no trust beyond that general duty which the law puts upon a corporation of using its property for the purposes contemplated in its creation. That sort of trust is not one which fastens upon the land and inheres in the title, going with it where it passes or restraining alienation, but founded solely upon the corporate character of the grantee, and so justifying the control which the statute gives to the courts. The title of the church is an absolute fee which it can transmit to a vendee with the judicial consent and approval. When that occurs the proceeds take the place of the land and become the corporate property which the court, by a suitable direction, devotes to the proper uses and purposes which the corporation was framed to subserve, and to accomplish which its property was bestowed. It is in no respect diverted from the religious corporation, or even from its denominational uses, and so far as there is an element of trust a sale is consistent with and not destructive of it.

It is next said that the acts of 1875 and 1876 have so far changed the then existing law as to prevent a transfer of the property, except in accordance with the rules and usages of the denomination, and that those rules and usages require the precedent approval of the presbytery. Before those amendments were made it had been settled that a religious corporation held its temporalities wholly free from the domination of any ecclesiastical authority, and by a tenure so independent that it could change its creed and denominational character without losing its hold upon its property. Doubtless the acts of 1875 and 1876 were intended to restrain, in some degree, that sort of diversion of church property from one sect to another, for the provision is that the trustees shall hold and administer it according to the rules and usages of the denomination to which the church members of the corporation belong, and shall not divert it to the support of some other disconnected institution. It is not important to take the measure of this new legislation, or even to challenge the construction which the general assembly has apparently put upon one of its own canons, for no authority in the church has ever

held or pretended that a society could not sell its land without the precedent consent of the presbytery. The interference of that body was sought by the minority of the society in the present case. The majority declined to appear or to recognize the authority invoked. The presbytery determined that it " was thus left to make up a deliverance by such light as it had," and decided two things, first, " that it is not certain that the sale and removal of the church would necessarily be attended with disastrous results if a large majority of the congregation should vote in favor of removal," and the presbytery " cannot, therefore, interfere to prevent a sale of the property," * * * but it would " advise the majority to proceed with caution and tenderness ; " and, second, " that an application to the court for leave to sell without a previous vote of a majority of the society in favor of such action is not in accordance with Presbyterian usage," and that no further steps should be taken " unless authorized by a vote of the congregation in public meeting assembled."

Waiving, therefore, the interesting question whether the presbytery had jurisdiction at all, it is enough to say that it gave its consent to proceeding with the sale provided only that a majority of the congregation should so decide in public meeting assembled, and that the steps in that direction should be taken " with caution and tenderness." The majority took the advice if they did not concede the jurisdiction. The pending application to the court was withdrawn. The trustees called a meeting of the congregation to consider and decide the question of a sale. Notice of that meeting was read from the pulpit for three succeeding Sundays prior thereto. At the meeting two of the elders presided. The vote was by ballot, and the qualification of the voters that provided by statute. Of these there were 137 entitled to vote. Eighty-five votes were cast, of which sixty-six were in favor of sale and nineteen opposed. Fifty-two members of the society entitled to vote did not do so, but twenty-four of those signed a paper of approval produced with the petition to the court. It is upon that petition presented after the vote that the order

here assailed rests. It is entirely clear that in granting it no rule or usage of the Presbyterian denomination was violated, the presbytery itself having so determined.

But it is said, thirdly, that the vote was illegal for want of a proper register. There is no force in this objection for a very obvious reason. Full and formal notice of the meeting and its purpose was given as we have seen. Every one entitled to a vote had opportuity to offer it, and the case shows that but one vote offered was refused, and there is not a particle of evidence that such vote should have been received, nor a word of proof that any vote received should have been rejected. In such a case, the mode and manner of making the registry is of very little importance. It only becomes so when it excludes a lawful vote or admits an unlawful one. No such question is presented.

It is finally argued that the meditated sale is unwise and imprudent, and likely to bring disaster upon the church That opens the merits of the controversy with which we can have no concern. The courts below have exercised their discretion upon the facts presented and, with their conclusion, we must be content. Undoubtedly, much may be said for and against the wisdom of the proposed sale and removal. Removing an old church has something of the peril of transplanting an old tree. It may take kindly to the new soil, or the roots may be so torn as never to heal; but the risk is with the majority of the society whose interests are immediately involved and whose judgment, fairly formed and ascertained, should prevail. Since we ought not to decide upon the merits, we shall not obtrude our advice.

The order should be affirmed, with costs.

All concur.

Order affirmed.