TRUSTEES OF THE PRESBYTERY OF NEW YORK, Appellant, *v.* WESTMINISTER PRESBYTERIAN CHURCH OF WEST TWENTY-THIRD STREET et al., Respondents.

Religious corporations — ecclesiastical law — construction and application of provisions of statute (Religious Corporations Law, Cons. Laws, ch. 51, §§ 12, 16, 18, 69) relating to control, management and dissolution of constituent church corporation by the governing body of the denomination to which such church belongs — when trustees of church corporation cannot sell church property without the consent of said governing body.

1. Under the Religious Corporations Law (Cons. Laws, ch. 51) a church which has been affiliated with and a constituent part of the

20

Statement of case.

Presbyterian Church in the United States of America, and as such has acquired property, cannot by secession terminate its relationship and thereby avoid the supervision and control of the denominational organization at large.

2. Because of dissensions in the defendant church, which was a constituent part of the Presbyterian Church at large and subject to its government, the proper judicatories of the latter dissolved the former. *Held,* that as the result of this action, the congregation as a spiritual or ecclesiatical body was dissolved, but that the legal entity, the corporation, remained in existence.

3. But further *held,* that although the corporation survived such dissolution and continued to hold title to the real estate formerly acquired, such title is largely a naked one and in the management and control thereof the trustees of the corporation holding over are subject to the government and control of the governing bodies of the church at large. As such they cannot devote the church property to the uses and purposes of a so-called " independent " church, although professedly devoted to the general principles of the Presbyterian faith. They cannot, without the consent of the governing bodies of the church at large, sell the real estate of which they hold title for the purpose of building and establishing a church in some other locality. On the contrary, another congregation having been duly formed in the place of and as successor to the one which was dissolved, it will be their duty, subject to the government and orders of the proper governing bodies, to hold and administer such church property for the use and benefit of the new congregation.

*Trustees of Presbytery* v. *Westminster Presbyterian Church,* 165 App. Div. 910, modified.

(Argued October 10, 1917; decided January 15, 1918.)

APPEAL from a judgment, entered January 4, 1915, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a final judgment entered in favor of plaintiff on failure of defendants to plead over after rendition of an interlocutory judgment overruling their demurrers to the plaintiff's complaint and dismissing said complaint, and also reversing a decretal order entered at the foot of said judgment appointing a trustee to convey certain property to plaintiff. The judgment thus reversed

awarded to plaintiff various forms of equitable relief which will hereafter be referred to at length.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Rush Taggart* and *Henry W. Jessup* for appellant. The history of the development of the Religious Corporations Law shows that the intent of the legislature has been since 1875 to deal with the church, parish or society and with its communicants as the essential unit constituting a church and merely provide for that unit conveniences of corporate form and administration. And in respect to the latter to provide a method by which, if the civil trustees fail in their trust, the record title can be assumed by the ecclesiastical governing body and the property managed and controlled for the original denominational purposes. (*Robertson* v. *Bullions,* 11 N. Y. 243; *Petty* v. *Tooker,* 21 N. Y. 267; *F. R. P. Church* v. *Bowden,* 10 Abb. [N. C.] 1; *Isham* v. *Fullager,* 14 Abb. [N. C.] 363; *People ex rel. Peck* v. *Conley,* 42 Hun, 98; *Smith* v. *Nelson,* 18 Vt. 511; *Shannon* v. *Frost,* 3 B. Mon. 253; *Gibson* v. *Armstrong,* 7 B. Mon. 481; *Den* v. *Bolton,* 7 Halst. [N. J.] 206; *German Reformed Church* v. *Seibert,* 3 Barr, 282; *McGinnis* v. *Watson,* 42 Penn. St. 1; *Ferraria* v. *Vasconcelles,* 23 Ill. 456; *Watson* v. *Farris,* 45 Mo. 183.)

*Richmond J. Reese* for respondents. The claim of the right to substitute the Presbytery as a trustee in place of the Westminster Presbyterian Church Corporation cannot be upheld. (Const. N. Y. art. 1, § 6; Const. U. S. art. 14, § 1; *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. 518; *People* v. *Johnson,* 185 N. Y. 219; *Stewart* v. *Palmer,* 74 N. Y. 183.)

Hiscock, Ch. J. This action is one in equity and since final judgment was rendered upon the allegations

of the complaint for failure of defendants to plead over after their demurrers had been overruled by an interlocutory judgment; we are concerned solely with the allegations of such complaint as a basis for relief. It is quite voluminous and there is a rather intricate commingling with its allegations of fact of statements of law which have no proper place there. From the entirety thus formed we shall attempt to select and summarize those allegations of fact which seem to be decisive of this litigation and determinative of the rights of the parties therein.

It appears from these allegations that this litigation involves a long-continued and deep-seated controversy between the Presbyterian Church in the United States of America and part of the former congregation of the Westminster Presbyterian Church of West Twenty-third Street, in New York.

During all of the period through which the controversy has been running there were in the Presbyterian Church in the United States of America, three judicatories which exercised jurisdiction for *denominational* purposes over Presbyterian churches situate in New York city. These were the Presbytery of New York, the Synod of New York and the General Assembly of the Presbyterian Church in the United States of America. The first named body in certain matters was represented by and acted through the " Trustees of the Presbytery of New York," which was an incorporated body, and from certain decisions and actions of the Presbytery appeals lay to the Synod and to the General Assembly in the order named.

The defendant Westminster Presbyterian Church of West Twenty-third Street in 1889 was formed by the consolidation or union of two Presbyterian churches theretofore existing in New York city and as such it became the owner of valuable real estate, and became and

thereafter until this controversy continued to be a constituent church or part of the Presbytery of New York and was subject to and submitted itself in ecclesiastical matters to the jurisdiction, control, direction and oversight of said Presbytery. Prior to March 17, 1908, this church became afflicted with and affected by turmoil and dissension with the result that at that date the Presbytery of New York took action dissolving "said church and congregation" and providing that the trustees of the Presbytery take charge of the property and records belonging to it. Appeal was taken from this action by and in behalf of the Westminster Presbyterian Church, successively, to the Synod of New York and to the General Assembly, but the action taken by the Presbytery was in all respects affirmed and approved by both of said bodies.

In accordance with such action the trustees of the Presbytery took possession of the real estate and paid large sums of money for the protection and preservation thereof and by the joint action of members of the former congregation and of the Presbytery a new church or congregation was organized, as a successor to the former one dissolved as aforesaid and it is to be inferred commenced worship in the church property in question.

At the time of the dissolution of the church the individual defendants were trustees of the corporation of said Westminster Church and they refused to accept or acquiesce in the action of the governing bodies of the Presbyterian Church of America as above set forth. They and various other members of the former congregation refused to accept letters of dismission to the new congregation formed by and with the consent of the Presbytery or to other churches, but, speaking in general terms, attempted and purported to maintain the organization of the former church and congregation and to carry on services independent of and in hostility to those conducted under the guidance of the Presbytery at the

former church. About a year after the dissolution proceedings these trustees presented a petition, asking for leave to sell the church property and that the church might remove from its present situation and build elsewhere and they " now assert as such that they are entitled to have and possess the said property, they ignore and repudiate the right of the Presbytery or its incorporated governing body to control their disposition thereof and they purpose and threaten to make disposition of the same contrary to the provisions of the Religious Corporations Law of the State of New York." After these general conditions of dissension and turmoil had prevailed for two years and in April, 1910, the Presbytery adopted a resolution declaring the defendant church extinct and directing that proceedings be instituted to obtain the record title to the church edifice and other buildings formerly belonging to said church, these proceedings being, as claimed, in accordance with that provision of the Religious Corporations Law (Cons. Laws, ch. 51) which provides that an incorporated governing body may decide "that a church * * * has become extinct, if it has failed for two consecutive years next prior thereto, to maintain religious services according to the discipline customs and usages of such governing body, * * * and may take possession of the temporalities and property belonging to such church, * * * manage the same; * * *. or may, * * * sell or dispose of the same." (Section 16.)

There are also set forth in the complaint in words or substance various provisions of the rules and laws of the Presbyterian Church and decisions of its General Assembly pertaining to the government, control and supervision of constituent churches and wherefrom especially it appears that the Presbytery is invested with disciplinary authority and has the power to decide whether existing churches shall be dissolved and new ones formed, to pass upon the

location of places of worship and to regulate the sale of church properties.

A judgment was entered, which, aside from mere findings of fact and conclusions of law which were inappropriate, adjudged as follows:

" *Second.* That by virtue of such proceedings thus duly had, affirmed and approved (referring to the proceedings for the dissolution of the defendant church) and by virtue of the laws, customs, usages, discipline and book of government of the Presbyterian Church in the United States of America the membership of all of those who were members of said defendant church prior to such dissolution ceased and determined and that by virtue of the Religious Corporations Law of the State of New York as then in force the office of trustees of said Church being a domestic religious corporation ceased and determined by virtue of their ceasing to be members of such particular church. * * *

" *Fifth.* That the defendants above named, and each and every one of them, be enjoined from transferring or disposing of any of the property, real or personal, of the defendant Westminster Presbyterian Church of West Twenty-third Street as a domestic religious corporation, and from suffering or permitting it to be encumbered, excepting and unless they convey, transfer and set over the same to the plaintiff, or to the West Twenty-third Street Presbyterian Church of New York City, the successor church duly constituted by the Presbytery, as hereinbefore set forth, to the end that the denominational trust, the protection of which is committed to the Presbytery of New York, and to this plaintiff, may be preserved and said property be not diverted to any other object than its use and administration in accordance with the discipline, rules, usages, laws and book of government of the Presbyterian Church in the United States of America; that they be likewise severally enjoined

from prosecuting any proceeding for a sale of the property, or from instituting any other like proceedings."

In deciding what the rights of the parties are upon the admitted allegations of the complaint as leading up to the general question whether the judgment secured by plaintiff at Special Term should have been wholly reversed, as was done, we find certain principles and questions settled by what was said and decided by this court in the case brought by the defendant, the Westminster Presbyterian Church of West Twenty-third Street, against this plaintiff. (211 N. Y. 214.) It was there amongst other things held that the Presbytery could not by dissolving the ecclesiastical organization in and of a church dissolve the corporation considered as a legal entity; that it could not upon the facts set forth here, and as they were proved in that suit, declare the Westminster Presbyterian Church " extinct " under the provisions of section 16 of the Religious Corporations Law and thereby deprive the corporation and its trustees of the title to and possession of the church property, but the latter would still continue to hold such property " subject to denominational uses, notwithstanding the dissolution of the spiritual church;" that notwithstanding the dissolution of the church as an ecclesiastical organization the trustees " still remained in law trustees of the real estate and were obligated at all events to care for that property pending a determination as to the future administration by other trustees if others should thereafter be appointed or elected whose duty it would be to administer the property in accordance with denominational usage."

Starting out, therefore, with these conclusions it becomes necessary for the purposes of this action to determine the extent and general effect of the denominational uses in subjection to which we said the trustees would hold the church property. The importance of

this consideration is evidenced by the claim of defendants in substance that they will be obeying all the requirements of denomination uses if they devote the property in their custody to the observance and propagation of what may be regarded as the general, fundamental principles of the Presbyterian faith, although they secede from the church organization at large with which they have been affiliated and utterly refuse to obey its government or be bound by its rules and regulations.   Expressed in another form defendants' claim is that they can utilize the church property of which they hold title for the maintenance and support of an "independent" Presbyterian church — a church free from and independent of any government or control of the church at large. On this theory practically the only limitation on the use of the property would be that it should not be devoted to the purposes of some other faith, as for instance, Methodist, Catholic or Jewish.   We do not accept this view.

It was distinctly held in our former decision, and, therefore, the proposition need not be discussed anew here, that the defendant corporation and its trustees were and are subject to the obligations and restrictions imposed by chapter 79, Laws of 1875, and chapter 110, Laws of 1876, and now carried without substantial change into section 5 of the Religious Corporations Law, which provides:

"The trustees of every religious corporation shall have the custody and control of all the temporalities and property, real and personal, belonging to the corporation and of the revenues therefrom, and shall administer the same in accordance with the discipline, rules and usages of the corporation and of the ecclesiastical governing body, if any, to which the corporation is subject, and with the provisions of law relating thereto, for the support and maintenance of the corporation,   *   *   *

and they shall not use such property or revenues for any other purpose or divert the same from such uses."

In addition to these general provisions, by chapter 97 of the Laws of 1902 there was added to the Religious Corporations Law a chapter or article dealing exclusively with Presbyterian churches " in connection with the general assembly of the Presbyterian Church in the United States of America " and wherein is contained a provision (Consolidated Laws, chap. 51, § 69) reading as follows:

" The trustees of an incorporated church to which this article is applicable shall have the custody and control of all the temporalities and property belonging to the corporation and of the revenues from such property, and shall administer the same in accordance with the discipline, rules, usages, laws, and book of government of the religious denomination or ecclesiastical governing body with which the church is connected, and with the provisions of law relating thereto, for the support and maintenance of the church corporation  *  *  *  and they shall not use such property or revenue for any other purpose or divert the same from such uses."

It has not been disputed in the discussion before us that these last provisions, although adopted after the organization of the defendant church, are applicable to the control and government of its trustees. Just as it was said upon the former appeal that section 5 of the Religious Corporations Law as found in the Consolidated Laws did not materially change the provisions of the acts of 1875 and 1876, so we think it may also be said that the provisions which we have last quoted do not materially change the statute before existing. This last enactment makes the trustees of a corporation of a Presbyterian church subject to the " laws and book of government " of the ecclesiastical governing body and which doubtless would be the place where and the methods by which

would be set forth the " discipline, rules and usages " to which the trustees were already subject under the prior enactments carried from the Laws of 1875 and 1876 into section 5 of the Religious Corporations Law already referred to. We think, therefore, that this amplification in the language of the statute did not infringe any property rights of corporations already organized, but was clearly within the power of the legislature as relating merely to regulation and control of corporate trustees.

The meaning and effect of this language seem to be pretty plain and to be utterly opposed to defendants' claim. There appears to be no doubt that under it a church which has become affiliated with and a constituent part of the church at large and as such has acquired property, would be compelled while this relationship continued to submit to the government of such church at large. Thus plainly says the statute. The only question which would remain would be whether by rebellion or secession a constituent church can terminate the relationship and become free from such obligations and control and we think that this question quite answers itself. It cannot.

Having deduced this general rule as governing the relations of the parties it becomes necessary to apply it to the settlement of certain specific questions which are presented.

It is alleged that the defendant trustees have attempted and threaten to sell the church property for the purpose of building a church in some other location and the courts are asked to restrain such action. We think it should be restrained under the circumstances of the present situation. Section 12 of the Religious Corporations Law provides that a " religious corporation shall not sell or mortgage any of its real property without applying for and obtaining leave of the court therefor pursuant to the provisions of the Code of Civil Pro-

cedure." From this provision the implication perhaps may flow that generally a religious corporation can sell or mortgage by obtaining such consent. But there certainly are limitations upon any such right. In the very section from which we have quoted there are limitations upon the right of a Protestant Episcopal or Roman Catholic church to dispose of its real estate, and in connection with this section in the case of a Presbyterian church are to be read, we think, the statutory provisions already quoted regulating the custody, control and administration by the corporate trustees of the property belonging to the corporation. While we are not called upon to determine whether and under what circumstances a Presbyterian religious corporation could dispose of its real property without the consent of the Presbytery or other governing body it seems clear enough that this corporation ought not to be allowed to sell its real estate as has been threatened or attempted. Amongst other considerations it would be a clear defiance of a rule of the Presbytery of New York, to the purport and effect " that no place of worship of any Presbyterian Church within the Presbytery should be changed or removed without the consent of the Presbytery being first requested and obtained." This seems to be a perfectly sound and reasonable regulation which is quite analogous to the requirements of the statute in respect of sale of their real estate by Protestant Episcopal and Roman Catholic corporations. The Presbytery having jurisdiction over an extended territory ought to be much better judges than the trustees of a single corporation whether the interests of the Presbyterian faith would be subserved by a change of location of a given church.

We next come to a consideration of the meaning as applied to the situation before us of the provision that " the trustees of an incorporated church   *   *   *   shall administer the same (the temporalities and property of

the corporation) in accordance with the discipline, rules, usages, laws, and book of government of the religious denomination or ecclesiastical governing body with which the church is connected, and with the provisions of law relating thereto, *for the support and maintenance of the church corporation.*"   (Section 69, subd. 3.)

It will be noted that there is a shifting of terms in this provision.   We think that when this provision provides that the trustees of an "incorporated church" shall administer this property for the support and maintenance of "the church corporation" it contemplates and takes into account the purposes and needs of the congregation which creates, perpetuates and is represented by the corporation or legal entity.   The term "incorporated church" for the purposes of this provision naturally suggests the entire church as it consists of the spiritual and legal bodies which go to make it up and, therefore, the support and maintenance of the congregation is to be regarded.   This is the only practical meaning that can be given to the provision.   Only to a limited extent can trustees administer the church property committed to their custody and control for the benefit simply of the legal corporation.   The body whose needs in the main are to be served and supported is the congregation which uses the property for worship and kindred religious or charitable purposes.   Therefore, under normal circumstances there would be no difficulty in determining that the trustees of the corporation now before us must administer and manage the church property in such manner as to serve the needs and purposes of the congregation connected with and represented by the corporation.   We have, however, a situation which is not normal and usual, but abnormal and unusual.   The Presbytery, with the approval and affirmance of appellate judicatories, has dissolved the congregation which originally in connection with the

corporation formed the West Twenty-third Street Presbyterian Church. It is alleged, and we think must be held, that under the circumstances set forth by the allegations of the complaint this action was lawful and thereby the original congregation passed out of existence and the church property can no longer be administered for its maintenance and support. In like manner it is alleged, not disputed, and we think must be held, that the same judicatories organized a new congregation known as the West Twenty-third Street Presbyterian Church as a successor to the old one and it is now urged that the church property shall be administered for the maintenance, support and needs of this congregation. As has been stated, this is an unusual situation, but we think that the claim of the Presbytery in this respect must be sustained as at least the only practical solution of the situation which is presented. Unless this is done, until some method may be found of solving the general, unfortunate situation, the church property must remain idle, for as we have pointed out the corporation has not the right against the will of the Presbytery to devote this property to the support and needs of a so-called independent church. The new congregation has been organized as a successor to the old one and as such we think it is entitled to the use of the church property. Therefore, it will be the duty of the corporation having the custody and control of this property under the supervision and orders of the Presbytery and under such pains and penalties as may be inflicted by a court of equity for failure to obey its decrees, to administer the same for the maintenance and needs of the new congregation and to afford to the latter a full and free opportunity in accordance with the rules, discipline and usages of the Presbyterian church, to occupy and enjoy said property for religious purposes.

We realize that these conclusions do not lead to a

complete solution of all of the difficulties which have been created by the controversy before us. We shall have a corporate shell manned by holdover trustees holding the title, rather naked, subject to the rules, etc., of the Presbyterian church at large from which it has attempted to secede, and subject to the powers of a Presbytery to which it is hostile for the maintenance, support and needs of a new congregation organized to take the place of the one which has been punished by dissolution. Those conditions do not augur very happy results, but we believe we should be going beyond the questions fairly involved and submitted to us in this case if we should attempt to determine farther than we have what course would lead out of these difficulties. The case has been presented by the plaintiff on the theory that the defendant church came within the provisions of section 16 of the Religious Corporations Law, and that a conveyance of its property by means of a trustee could be directed under that section. We hold now as we did on the first appea that that section has no application to the facts of this case. By the act of the Presbytery in dissolving the former congregation instead of bringing it back by other disciplinary means to a proper and harmonious condition, the existence of a body which might have elected successors to the present trustees now holding over has been terminated.

The answer to the suggestion made by the plaintiff that the corporation be dissolved and the real estate held by it be disposed of in dissolution proceedings is the fact that section 18 of the Religious Corporations Law relating to the dissolution of religious corporations expressly exempts those located in New York. Under these circumstances it is possible that a court of equity would solve the situation by compelling the present corporation to convey title to the real property to a corporation organized by the new congregation for whose

substantial benefit it is held, or by permitting the new and successor congregation to elect trustees to succeed those holding over, or by some other method bring together the legal title and beneficial interest of and in the real property. Those are questions of such general importance that we feel that we should leave them to future solution if necessary when they have been fully considered and fairly presented to us.          .

In accordance with these views the judgment of the Appellate Division should be reversed, in so far as it reverses those provisions of the judgment of the Special Term allowing plaintiff costs and marked "Second" and "Fifth" respectively which read and provide as follows:

"*Second.* That by virtue of such proceedings (the proceedings dissolving the congregation of the defendant church) thus duly had, affirmed and approved, and by virtue of the laws, customs, usages, discipline and book of government of the Presbyterian Church in the United States of America the membership of all those who were members of said defendant church prior to such dissolution ceased and determined     *     *     *.          .

"*Fifth.* That the defendants above named, and each and every one of them, be enjoined from transferring or disposing of any of the property, real or personal, of the defendant Westminster Presbyterian Church of West Twenty-third Street as a domestic religious corporation, and from suffering or permitting it to be encumbered, excepting and unless they convey, transfer and set over the same to · plaintiff, or to the West Twenty-third Street Presbyterian Church of New York City, the successor church duly constituted by the Presbytery," and which prov sion should be so modified as to permit the trustees holding over to apply if necessary on notice to pla ntiff, for leave to mortgage the church property for the purpose of raising funds with which to preserve the property while in their custody.

Said judgment should be further modified so as to provide and adjudge that the defendants hold the title to and must administer the property belonging to said corporation now in their custody and control in accordance with the discipline, rules, usages, laws and book of government of the Presbyterian Church in the United States of America as administered by the judicatories of said church for the support and maintenance of the church corporation thereby including the support, maintenance and needs of the church organized as a successor to the defendant church. Except as otherwise hereinbefore stated the judgment of the Appellate Division should be affirmed, and the judgment of the Special Term consisting of the specified portions of provisions second and fifth as modified is affirmed, with costs against the individual defendants in this court and the Appellate Division.

CHASE, CUDDEBACK, HOGAN, POUND and ANDREWS, JJ., concur; McLAUGHLIN, J., not sitting.

Judgment accordingly.