HARLEM CHURCH OF THE SEVENTH DAY ADVENTISTS, Respondent, Appellant, *v.* GREATER NEW YORK CORPORATION OF SEVENTH DAY ADVENTISTS and Another, Appellants, Respondents.*

First Department, June 20, 1935.

*Nathan Lieberman* of counsel [*Isidor B. Seidler* with him on the brief], for the plaintiff.

*Jay Noble Emley* of counsel [*Julius Lerner* with him on the brief], for the defendants.

* Revg. 145 Misc. 508.

McAvoy, J. This action was brought to secure specific performance of an alleged agreement under which real property was to be held for the use and benefit of plaintiff and was to be conveyed to plaintiff or its designee upon demand.

The defendants have appealed from the judgment in its entirety and the plaintiff appeals only from a portion thereof. For the sake of clarity, hereinafter the defendants respectively will be referred to as appellants and the plaintiff will be referred to as respondent.

The Seventh Day Adventists are a religious denomination founded in the United States, having communicants the world over and having as the highest ecclesiastic governing body the General Conference of Seventh Day Adventists at Washington, D. C. Lesser ecclesiastic bodies have jurisdiction of the denominational activities within limited geographical boundaries. The respondent is a religious corporation duly organized under the laws of the State of New York for the purpose of holding title to the property and temporalities of the congregation known as the Harlem Church of the Seventh Day Adventists. The appellant Greater New York Conference of Seventh Day Adventists is the unincorporated local ecclesiastic governing body of the denomination. The appellant Greater New York Corporation of Seventh Day Adventists is a religious corporation duly organized under the laws of the State of New York for the purpose of holding title to all the property and temporalities of the denomination in Greater New York, and its membership is composed of the delegates to the conference from the several congregations or churches, members thereof.

The appellant conference employed one James K. Humphrey, a negro minister, to build up a church in Harlem by evangelical work and for that purpose rented a tent for him in the summer of 1910. His efforts met with success, and in October, 1910, he contracted in his individual name to purchase from the Baptist Church of the Redeemer the property located at 184 West One Hundred and Thirty-fifth street for the sum of $22,700, $1,500 in cash, and the balance, $21,200, being made up in a first mortgage of $16,000 and a second mortgage of $5,200. Humphrey took title in his own name on December 12, 1910. The certificate of incorporation of the respondent was signed in December, 1910, and filed on February 8, 1911, in the New York county clerk's office. Humphrey conveyed title to the One Hundred and Thirty-fifth street property to the respondent by deed dated July 19, 1911. The certificate of incorporation of the appellant corporation was filed about July 25, 1911.

The congregation of the Harlem Church of the Seventh Day Adventists was organized by Humphrey and was admitted to the appellant conference on or about January 25, 1911.

The parties involved in this litigation are governed by the provisions of the Religious Corporations Law. Section 5 of the Religious Corporations Law provides, in part, as follows:

" § 5. The trustees of every religious corporation shall have the custody and control of all the temporalities and property, real and personal, belonging to the corporation and of the revenues therefrom, and shall administer the same in accordance with the discipline, rules and usages of the corporation and of the ecclesiastical governing body * * * with the provisions of law relating thereto * * * or with the denomination, if any, with which it is connected; and they shall not use such property or revenues for any other purpose or divert the same from such uses."

The appellant conference is the governing body, and when the congregation was admitted to the conference it subjected itself to and became bound by the discipline, rules and usages of the conference. It is conceded that the denomination's rules required that it, and not the constituent churches, should hold title to all church buildings. Beneficial use also was to be in the denomination, and not in the constituent churches.

Efforts to have the congregation led by Humphrey comply with the rules of the denomination resulted in the congregation of the Harlem Church of the Seventh Day Adventists voting, in or about December, 1915, to deed the West One Hundred and Thirty-fifth street property to the appellant corporation and title was transferred on December 31, 1915. It continued to hold this title until about May 4, 1917, when it disposed of the property for $18,000, subject to a first mortgage upon which there was still unpaid $13,000. The congregation continued to occupy the One Hundred and Thirty-fifth street property until about June, 1916. Meanwhile, the appellant corporation in May, 1916, acquired title to property 144–146 West One Hundred and Thirty-first street for $31,000, subject to a first mortgage of $24,000, upon which there was due $19,000 and a second mortgage of $3,500, upon which there was unpaid $2,500. It will be noted that this property was acquired directly by the appellant corporation and legal title never was in the respondent. In June, 1916, the One Hundred and Thirty-fifth street church was found to be too small for the congregation and the latter was moved therefrom and was given possession of the West One Hundred and Thirty-first street property, which it or those claiming to represent it have continued to occupy ever since.

The relations between the respondent and the appellants continued harmonious until about 1929. On October 28, 1929, Humphrey was suspended from the ministry because of continued infractions of the rules of the denomination, which forbade its

ministers to engage in business. Soon thereafter the Harlem congregation demanded title to the West One Hundred and Thirty-first street property. This demand was not complied with. There is testimony that on or about November 2, 1929, the congregation voted to secede from the denomination. Thereafter it ceased to conform to the rules, regulations and requirements of the denomination and the appellant conference adopted a resolution on January 4, 1930, dropping the congregation from membership therein. In March, 1930, some of those who formerly were members of the congregation worshipping in the One Hundred and Thirty-first street church formed a new denomination under the leadership of Humphrey, which is known as the United Sabbath Day Adventists Conference, which organization has since its formation occupied the One Hundred and Thirty-first street property.

This suit is the result of the appellants' failure to comply with the demand that title to the One Hundred and Thirty-first street property be conveyed to the Harlem congregation. Briefly, the claim of the respondent is grounded on the following allegations of the complaint:

" That on or about the 31st day of December, 1915, the plaintiff conveyed to the Greater New York Corporation of Seventh Day Adventists, one of the defendants herein, its church building located at 184 West 135th Street, Borough of Manhattan, City of New York, under an agreement with the defendants or either of them, as follows: (a) the Greater New York Corporation was to hold the legal title to said church building, or in case of its sale, to any property thereafter purchased for the plaintiff with the proceeds of such sale.

" (b) The plaintiff was to occupy said church, or any other church thereafter acquired by and for it.

" (c) The plaintiff was to pay the principal and interest on all mortgages held as liens against its church building, maintain the said building at its own costs and expense, and in general to have complete control and management of its said property.

" (d) The defendant Greater New York Corporation was to hold legal title to said church building until such time as plaintiff desired to sell it or take legal title in its own name, and immediately upon a demand for a reconveyance the defendants would procure such reconveyance, and the defendant Greater New York Corporation would execute and deliver the necessary instruments to effect such conveyance.

" (e) In the event of a sale of the church property to a third party, then the defendants, or either of them, would apply the proceeds

thereof to the purchase price of any church property which the plaintiff may thereafter purchase. * * *

" That the defendants, or either of them, and in pursuance of the agreement heretofore mentioned thereupon offered to purchase the larger church at 144–146 West 131st Street, New York City, for the plaintiff, advance the purchase price therefor, take title in the name of the defendant Greater New York Corporation of Seventh Day Adventists, and hold same under the original arrangement and agreement as mentioned in paragraph marked ' Ninth ' of this complaint. * * * That the plaintiff accepted said offer."

The evidence produced by the respondent failed to establish either the specific agreement to reconvey sued on or an express trust. The learned trial court, however, was of the opinion that a trust had arisen by implication of law primarily because the funds used to purchase the One Hundred and Thirty-fifth street property in 1911, and the One Hundred and Thirty-first street property in 1916 had been collected almost entirely from the Harlem congregation which had also contributed about $200,000 to the appellant conference between 1920 and 1927 for tithes, foreign missions, and harvest gatherings, and also because the One Hundred and Thirty-first street property had been maintained, operated and controlled by the congregation while the books of the appellant corporation indicated that it considered itself trustee for the respondent and the congregation.

As to the One Hundred and Thirty-fifth street property, the record establishes that this property was originally purchased in 1910 for $22,700 — $1,500 cash, and mortgages aggregating $21,200. When the property was conveyed to the appellant corporation in 1915, a total of $5,700 had been paid off on the property. Of this $5,700 the record shows that the appellants had contributed $3,744. While the appellant corporation held title it further reduced the first mortgage by $3,000 and some $515 accrued interest. The property was disposed of in 1917 for $18,000. It is fair to assume that in 1915 when the appellant corporation took the property subject to mortgages totaling $17,000, the equity of the then record owner of the fee of the property was very small.

As to the One Hundred and Thirty-first street property, the evidence proves that the entire purchase price was paid by the appellant corporation and no part of it was paid by the respondent or the Harlem congregation. In 1919 and 1920 the congregation paid $4,500 toward reduction of the first mortgage on the property. The denomination, however, has paid a total of $18,500 on the property and there is a continuing liability for the unpaid balance of the mortgage.

It is urged that anything paid by the denomination was more than offset by contributions by the Harlem congregation. Nowhere in the record is there any evidence of any agreement to the effect that contributions were to offset payments, and no claim is made that the appellants were directed to allocate or apply any part of the contributions made by the congregation to offset advances by the appellants. We may not assume that the contributions by the Harlem congregation to the appellants were for " offset " purposes when the parties themselves did not so intend them. Contributions for other than specific purposes were contributions for the general purposes of the appellant. The moneys contributed for tithes, foreign missions and harvest gatherings were contributions for specific purposes and may not be considered in connection with the properties in question.

The Harlem congregation had the exclusive use of the property and the congregation never paid any rent for its use and occupation of the premises. The carrying charges were paid by the congregation, a sort of substitution for rent. This arrangement was in entire accordance with the rules and usages of the denomination, to wit, that every congregation using church property was required to pay the carrying charges of their church building.

The mere fact that the properties of the denomination were designated on its books by the name of the congregation which occupied the same is insufficient to establish any trust. This was simply a convenient way of distinguishing the property and does not destroy the claim that the property was held for the benefit of the denomination at large.

When the Harlem congregation joined the appellant conference in 1911, it subjected itself to and became bound by the rules of the denomination. When the Harlem congregation rebelled and seceded it could not terminate the relationship and free itself from the obligations and rules of the denomination. As the Court of Appeals has said: " There appears to be no doubt that under it [the Religious Corporations Law] a church which has become affiliated with and a constituent part of the church at large and as such has acquired property, would be compelled while this relationship continued to submit to the government of such church at large. Thus plainly says the statute. The only question which would remain would be whether by rebellion or secession a constituent church can terminate the relationship and become free from such obligations and control and we think that this question quite answers itself. It cannot." (*Trustees of Presbytery* v. *Westminster Church*, 222 N. Y. 305.) Where the main body of a denomination succeeds to the beneficial use of church property by reason

of the secession of a subsidiary, branch church, the succession is brought about by application of the statute, and there is no resultant unjust enrichment.

We decide that the appellant corporation properly holds the legal title to the property for the denomination, under the rules of the latter. It is, therefore, unnecessary to consider the contention of the respondent with reference to its cross-appeal.

The judgment appealed from should be reversed, with costs to the defendants, and the complaint dismissed, with costs.

MARTIN, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment reversed, with costs to the defendants, and the complaint dismissed, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.