FIRST PRESBYTERIAN CHURCH OF SCHENECTADY et al., Respondents, v UNITED PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA et al., Appellants.

Third Department, March 10, 1983

### APPEARANCES OF COUNSEL

*Duncan S. MacAffer* for appellants.

*Simon, Trieble & Werner* (*Robert S. Trieble* of counsel) and *Williamson & Taber* (*W. Jack Williamson* of counsel), for respondents.

### OPINION OF THE COURT

KANE, J.

This matter concerns the dispute between a local church and its regional presbytery over the power of an administrative commission appointed by the presbytery to control

the affairs and property of the local church. At issue is the extent of this court's jurisdiction to determine intrachurch disputes under Federal and State law and, if exercised, the degree of deference required in effectuating such determinations. Of necessity, a brief recitation of the facts and a history of plaintiff church is required.

The First Presbyterian Church of Schenectady was founded as an unincorporated religious association in 1760 during the days of the Colonial Governor. It was incorporated in the State of New York pursuant to chapter 79 of the Laws of 1801 on January 14, 1803, and except for a change of name on January 20, 1809, there has been no change in its corporate status since that date. During this entire period up to January, 1977, it subscribed to the Presbyterian doctrine, and recognized and adhered to the authority of the regional presbytery over its congregation and property. However, prior to January, 1977, as a result of disenchantment and discontent with what it considered the policies and activities of defendant United Presbyterian Church in the United States of America (UPCUSA), plaintiff petitioned defendant Presbytery of Albany to be dismissed to another denomination. The request was denied and an administrative commission was instructed to investigate the actions of the local session, the governing body of plaintiff church elected by the members of its congregation. However, before said commission rendered its report, plaintiff church, on January 24, 1977, at its annual meeting, adopted a resolution severing relations with defendants and retaining title to all property both real and personal then held or administered by it. On February 1, 1977, the investigating commission made its report to the presbytery, recommending removal of the local session as the governing body of the First Presbyterian Church of Schenectady and the appointment of another administrative commission with full power of the session to act in its place. The presbytery acted in accordance with the recommendation and, at the same time dissolved the pastoral relationship of plaintiffs Mekeel and Alford with the local church and deleted their names from all its rolls. There was no administrative appeal taken by plaintiff church or any of its members through the hierar-

chy of defendants following this action; rather, plaintiffs chose to ignore or disobey directives of the commission and pursued their functions without acceptance of or submission to the authority of defendants. Thereafter, on February 17, 1977, plaintiff church instituted an action against UPCUSA in the United States District Court for the Northern District of New York, seeking a declaratory judgment of independence from UPCUSA and injunctive relief restraining it from interfering with plaintiff's independence. By decision dated March 11, 1977, this relief was denied, *inter alia,* on the grounds the dispute was subject to resolution under ecclesiastical law and not a subject for judicial inquiry (*First Presbyt. Church of Schenectady v United Presbyt. Church in United States of Amer.,* 430 F Supp 450).

The instant action was then commenced seeking the same type of relief. An application for temporary injunctive relief was denied by Special Term in a decision dated July 18, 1977, upon much the same grounds as in the District Court action. However, upon trial before the court without a jury of this action and the counterclaim interposed by defendants seeking affirmative injunctive relief on behalf of its administrative commission, Trial Term ultimately concluded that it could not declare the status or powers of the respective parties without interpreting church law, and thus impermissibly trespass into the ecclesiastical field, but, that it was within its power to resolve the questions of title and possession of church property by applying the "neutral principles of law" concept as enunciated in *Jones v Wolf* (443 US 595). Accordingly, plaintiffs were granted the injunctive relief they sought, and defendants' counterclaim was dismissed.

On this appeal, defendants contend that the issues in this matter must be decided by applying the long-standing rule of *Watson v Jones* (13 Wall [80 US] 679) and its progeny, which requires that secular courts give deference to the authority of a hierarchical church in a dispute involving matters of intrachurch policy, power and property. This being the case, defendants assert that once Trial Term looked behind the provisions of the constitution of UPCUSA (the Book of Order), it violated this rule, which

was reiterated in *Jones v Wolf (supra)*, upon which it relied heavily. In support of their position, defendants contend that throughout its history, plaintiff church has acquiesced and followed all of the mandates, rules, regulations and assessments of UPCUSA and, thus, by this action has voluntarily subjected itself to the guidance and control of the national denomination. Moreover, defendants argue that as the use and benefit of church property is governed and controlled by the organic law of the church as provided in its Book of Order, there is, therefore, vested in defendants a beneficial interest in this property without affecting the legal title to that property. Accordingly, since the Book of Order spells out in detail the procedures to be followed in the event of a dispute such as the one at hand, upon compliance with those procedures, defendants are entitled to the aid of a court of equity to enforce any ecclesiastical decree imposed against a congregation (*Westminster Presbyt. Church of West Twenty-third St. v Trustees of Presbytery of N. Y.*, 211 NY 214).

Plaintiffs, on the other hand, contend that the clear holding in *Jones v Wolf (supra)* and cases that have followed it in other jurisdictions, reject the argument that denominational replacement of a local session by an administrative commission can be enforced in a secular court of equity. Rather, plaintiffs assert that this case is the classic dispute as to the legal ownership of property to which the "neutral principles of law" rule may be applied, and that Trial Term properly applied that rule to the facts of this case.

We are called upon to resolve what seems to be a clear-cut issue. However, resolution of that issue is far from simple. As a first step, we conclude that plaintiff church is not subject to any of the pertinent provisions of the Religious Corporations Law of the State of New York. Having been incorporated prior to January 1, 1828, the church is possessed of all the rights and privileges which it was accorded at the time of the original incorporation (L 1896, ch 336, now Religious Corporations Law, § 24). Next, we must determine whether this dispute may be resolved by applying the "neutral principles of law" analysis to this factual setting, without contravening established prin-

ciples of separation of church and State. We think not. Resolution of the controversy must depend, ultimately, on considerations of religious doctrine and practice. It is not dependent "exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges" (*Jones v Wolf, supra,* p 603; see, also, *Avitzur v Avitzur,* 58 NY2d 108).

While the use and occupancy of property may depend on the result of this litigation, the genesis of the dispute is rooted in the exercise of power by a hierarchical church according to its Book of Order. Applying "neutral principles of law", as suggested by plaintiffs, will, in our view, inexorably entangle this court in a religious controversy. Title to property is not the source of the dispute; it is the beneficial use and application of that property which is at issue. Any determination of that issue by this court would be a direct intrusion into the area of religious doctrine, practice and administration. In such circumstances, we must defer to the authority of the ecclesiastical body (*Serbian Orthodox Diocese v Milivojevich,* 426 US 696).

This does not mean that the court may not afford assistance to church authority in the enforcement of its decrees, for otherwise the controversy may never be resolved. Defendant presbytery has the right to proceed in a court of equity to enforce its ecclesiastical decrees against the congregation of plaintiff church (*Trustees of Presbytery of N. Y. v Westminster Presbyt. Church of West Twenty-third St.,* 222 NY 305, 318-319; cf. *Avitzur v Avitzur, supra*). This relief should be granted to defendants in accordance with their counterclaim.

The judgment should be modified, on the law and the facts, by reversing so much thereof as granted plaintiffs injunctive relief and dismissed the counterclaim; the complaint dismissed, and judgment directed to be entered in favor of defendants on their counterclaim, permanently enjoining plaintiffs from failing to obey the directives, orders and mandates of the administrative commission in the management and control of plaintiff church, and, as so modified, affirmed.

MAHONEY, P. J. (concurring). In my view, Trial Term properly decided that use of the "neutral principles of law"

test was appropriate for resolution of the issue regarding title and possession of church property. I thus reject the majority's finding that use of this test will contravene established principles of separation of church and State.

Having concluded that Trial Term properly adopted the "neutral principles of law" test first permitted by the United States Supreme Court in *Presbyterian Church v Hull Church* (393 US 440, 449), I disagree with the conclusion reached by Trial Term upon application of that test. As stated by the Supreme Court, use of the "neutral principles of law" test in settling local church property disputes requires examination of the language of the deeds, the terms of the local church charters, the State statutes governing the holding of church property and the provisions in the constitution of the general church concerning the ownership and control of church property (*Jones v Wolf*, 443 US 595, 603).

The only one of the above-enumerated sources which can arguably give the general church the right to control the property at issue in this lawsuit is the constitution of the United Presbyterian Church in the United States of America (UPCUSA). A major portion of this constitution, entitled the Book of Order, deals with the form of governmental structure within the general church and was made a part of the record in this case. Review of that document reveals several sections which support the general church's claim of control over the local church's property.

Section 41.07 of chapter XI provides that the "session", which is the governing body of the local church, has "exclusive authority over the uses to which the church buildings and properties may be put". (See, also, Book of Order, ch XI, § 41.08; ch XXXII, § 62.08.) Section 41.15 of the same chapter authorizes the regional governing body within UPCUSA, the "presbytery", to appoint a "commission" to take the place of the local church's "session", with the full powers of the "session", upon a determination that "the session of a particular church is unable or unwilling to manage wisely the affairs of its church". This section was utilized by the Presbytery of Albany in this case following its investigation in the beginning of 1977 which led to

appointment of an administrative "commission" with the full power of the "session" to act in its place.

A secular analysis of these provisions of UPCUSA's constitution, which were not present in the Presbyterian constitution being reviewed in *Jones v Wolf* (*supra*), compels me to conclude that the general church and its regional presbytery are entitled to prevail on their counterclaim whereby they seek to permanently enjoin plaintiffs from interfering with the management and control of the affairs and properties of the local church by the administrative "commission".*

In so ruling, I am not unaware of the difficulties which accompany use of the "neutral principles of law" test in resolving this matter. In relying on the above-mentioned provisions within the Book of Order to support the general church's right to control the property owned by the local church, religious doctrine and practice may appear to be involved since the decision by the Presbytery of Albany to replace the local church's "session" with an administrative "commission" was premised on a finding that the local governing body "is unable or unwilling to manage wisely the affairs of its church" (Book of Order, ch XI, § 41.15). This appearance of civil court entanglement in religious questions is illusory. "[T]here may be cases where the deed, the corporate charter, or the constitution of the general church incorporates religious concepts in the provisions relating to the ownership of property. If in such a case the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body." (*Jones v Wolf,* 443 US 595, 604, citing *Serbian Orthodox Diocese v Milivojevich,* 426 US 696, 709.)

---

* It should be noted that another provision in the Book of Order dealing with the authority to control church property, section 62.11 of chapter XXXII, is not applicable to this case. That section empowers the regional "presbytery" to control local church property whenever the local church is "formally dissolved by the presbytery, or has become extinct", two conditions which are conceded not to have occurred in the instant case.

Additionally, it should be noted that reliance on an amendment to the Book of Order made in 1981 (ch XLII, § 72.02), wherein it is explicitly stated that property owned by the local churches is held in trust for the use and benefit of UPCUSA, is not germane to the facts of this case which occurred in 1977.

Civil courts *must,* therefore, be bound by the ecclesiastical determination made within the governmental framework of the general church that the local "session" is not wisely managing its own affairs. That being the case, civil courts may then read the constitution in a secular manner which will not offend any constitutional principles.

Accordingly, I would modify the judgment entered upon Trial Term's decision by (1) affirming that portion which dismissed plaintiffs' request for declaratory relief, (2) reversing that portion which granted plaintiffs' request for injunctive relief, and (3) reversing that portion which dismissed defendants' counterclaim for injunctive relief.

CASEY, J. (dissenting). In my view, application of the "neutral principles of law" approach to resolution of the intrachurch property dispute at issue here requires affirmance of Trial Term's judgment and, therefore, I dissent.

The State has a legitimate interest in resolving property disputes, and a civil court is a proper forum for that resolution (*Presbyterian Church v Hull Church,* 393 US 440, 445). A civil court's role, however, in resolving church property disputes is severely circumscribed by the First Amendment, but "[c]ivil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property" (*supra,* at p 449). Rather, the First Amendment forbids civil court involvement in those church property disputes "where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity" (*Serbian Orthodox Diocese v Milivojevich,* 426 US 696, 709). Thus, although virtually any dispute over church property can be characterized generally as religious, particularly those arising out of a schism between a local church and the denominational church to which it has been affiliated, the foregoing principles establish that the First Amendment does not preclude civil court resolution of such a dispute so long as the method selected by the civil court for resolving the dispute does not require extensive civil court inquiry into ecclesiastical matters (compare *Jones v Wolf,* 443 US 595, with *Serbian Orthodox Diocese v Milivojevich, supra*).

In *Jones v Wolf (supra),* the court held that the "neutral principles of law" approach to resolving church property

disputes does not run afoul of the First Amendment. In so doing, however, the court noted that a State is free to adopt any one of a number of methods for resolving such disputes, so long as the method chosen does not involve extensive inquiry into religious doctrine or polity (*supra,* at p 602). The Court of Appeals has recently employed the "neutral principles of law" approach to a religious dispute involving a marital agreement (*Avitzur v Avitzur,* 58 NY2d 108), and the same approach should be used to resolve this church property dispute (see *Russian Church of Our Lady of Kazan v Dunkel,* 33 NY2d 456, 462).

*Jones v Wolf* (443 US 595, 603, *supra*) instructs that, under the "neutral principles of law" approach to resolving church property disputes, a civil court may examine the deeds, the local church charter, the constitution of the general church and State statutes governing the holding of church property, to determine the intentions of the parties concerning ownership in the event of a schism. The court cautioned, however, that "[i]n undertaking such an examination, a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts" (*supra,* at p 604).

New York property disputes in the Presbyterian Church are often governed by subdivision 3 of section 69 of the Religious Corporations Law, which requires the trustees of the local church to govern the property in accordance with the constitution of the United Presbyterian Church in the United States of America (see, e.g., *Trustees of Presbytery of N. Y. v Westminster Presbyt. Church of West Twenty-third St.,* 222 NY 305). For churches incorporated prior to 1828, the provisions of the Religious Corporations Law are not applicable if they are inconsistent with the law as it existed at the time of incorporation, unless the church reincorporates after 1828 or the trustees, by resolution, determine that the provisions of the Religious Corporations Law shall apply (Religious Corporations Law, § 24). Here the local church incorporated in 1803, and the provisions of subdivision 3 of section 69 of the Religious Corporations Law are apparently inconsistent with the law at that time (see *Matter of First Presybt. Soc. of Town of Buffalo,* 106 NY 251, 254). The record reveals no reincorpo-

ration by the local church subsequent to 1828 and no resolution by the trustees determining that the provisions of the Religious Corporations Law shall apply. Thus, the relevant New York statute governing ownership and control of church property is inapplicable.

Turning to the original certificate of incorporation of the local church, it is silent as to the manner in which local church property is to be owned and controlled, as is an amended certificate filed in 1809. Similarly, the various deeds in evidence by which the local church acquired property over the years contain nothing to indicate that the denominational church had any interest, legal or beneficial, in the property.

Turning now to the constitution, or Book of Order, of the denominational church, care must be taken to make the examination in light of the Supreme Court's cautionary instruction, noted above, that the document be scrutinized in purely secular terms. Defendants rely alternatively on two provisions in the Book of Order to establish the parties' intent that the denominational church retain control over the local church's property in the event of a schism.[*] In part II, chapter XXXII, section 62.11, the Book of Order provides that whenever a local church has been dissolved or becomes extinct, "such property as it may have * * * shall be held * * * as the presbytery may direct, in conformity with the Constitution of The United Presbyterian Church in the United States of America". The provision, however, is expressly limited to dissolution or extinction of a local church, which concededly has not occurred here. Moreover, the phrase "such property as it may have" can be read as recognizing the local church's right to control and dispose of its property before it is dissolved or becomes extinct. Next, defendants rely on sections 41.07 and 41.15 of chapter XI of part II. Section 41.07 expressly vests in the "session", which is the governing body of the local church elected by its communicant members and moderated by its

---

[*] Defendants contend that the wording of these two provisions differs from that of similar provisions in the Book of Order reviewed by the Georgia courts in *Jones v Wolf* (244 Ga 388, cert den 444 US 1080), following remand from the Supreme Court, and that, therefore, the result herein should be different from that in *Wolf*, where the courts ruled that the local church retained control of its property.

minister, the "exclusive authority over the uses to which the church buildings and properties may be put". Section 41.15 authorizes the presbytery, or regional governing body, to appoint a commission to replace a local church's session if it finds that the session is unable or unwilling to manage wisely the affairs of its church. Defendants actually used this provision here. Concerning the control of local church property, this provision is ambiguous in view of the general principles of church government contained in part II, chapter V, section 35.03, which provides that the "judicatories", including the presbytery, shall have no "civil jurisdiction", and that "[t]heir power is wholly moral or spiritual, and that only ministerial and declarative". Of greater significance is that in 1929 an amendment to the Book of Order was proposed which would have expressly provided that the local churches held their property in trust for the denominational church. The proposal was rejected, but in 1981, long after the dispute at issue here arose, a similar amendment was proposed and accepted. Although this latter amendment stated that its purpose was simply to declare a principle adhered to by the church from its inception, the proposal and rejection of a similar amendment in 1929 indicates otherwise.

The foregoing factors amply support the trial court's decision. The deeds clearly vest title to the property exclusively in the trustees of the local church. The Book of Order leaves exclusive control over the property with the local governing body, and while defendant presbytery has jurisdiction over the local governing body, that jurisdiction is expressly limited to moral or spiritual matters. Thus, at the time the instant dispute arose, the relevant documents contained no clear expression of the parties' intent that control over local church property be granted to defendants in the event of a schism. The proposal and rejection of a trust amendment in 1929 and the proposal and acceptance of a similar amendment in 1981 provide further proof establishing that such was not the intention of the parties. It should be emphasized that this analysis requires no inquiry into church doctrine or polity. Nor does the Book of Order incorporate religious concepts in the provisions relating to ownership of property. Rather, the foregoing

conclusion results from examination of the relevant documents in light of "objective, well-established concepts of trust and property law familiar to lawyers and judges" (*Jones v Wolf,* 443 US 595, 603, *supra*).

Before concluding, some of defendants' arguments should be disposed of directly. Defendants maintain that pursuant to *Watson v Jones* (13 Wall [80 US] 679), the First Amendment requires civil courts to defer to church decision in disputes involving church affairs. The holding in *Watson,* however, has clearly been modified over the years and, as noted above, *Jones v Wolf* (*supra*) authorizes civil court involvement in church property disputes under the "neutral principles of law" approach employed herein. Defendants also maintain that New York law requires deference to the church decision herein, but the cases cited for this proposition (*Trustees of Presbytery of N. Y. v Westminster Presbyt. Church of West Twenty-third St.,* 222 NY 305, *supra; Matter of Presbytery of Albany,* 63 Misc 2d 791, affd 35 AD2d 252, affd 28 NY2d 772, app dsmd 404 US 803) were decided on the basis of statutes not applicable here. Relying upon *Serbian Orthodox Diocese v Milivojevich* (426 US 696, *supra*), defendants argue that deference must be given to the decision of defendant presbytery to appoint a commission to replace the session of the local church and that, therefore, the courts of this State cannot resolve the property dispute. In the *Serbian* case, however, control over the disputed property concededly rested with the bishop of the diocese and the real dispute was over the propriety of the decision of the denominational church to remove the bishop, clearly a matter of church polity. Here, in contrast, the dispute is the classic one over the control of local church property in the event of a schism between the local church and the denominational church with which the local church has been affiliated, and resolution of that dispute does not depend upon the propriety of any disciplinary action taken by the denominational church. Defendants also rely on the lengthy affiliation of the local church with the denominational church, but mere involvement of the local church in defendants' ecclesiastical affairs does not necessarily subject the local church to defendants' control insofar as its property matters may be concerned

(*New York Dist. of Assemblies of God v Calvary Assembly of God,* 64 AD2d 311, 314). Defendants assert that beneficial use or control of the property is at issue here, not legal title, but that is true of most intrachurch property disputes. Indeed, the theory that civil courts should not become involved where the dispute involves use or control of church property, rather than legal title, was advanced by the dissenters in *Jones v Wolf* (443 US 595, 610-621, *supra*). Finally, that defendants may be a hierarchical religious organization, rather than congregational, as defendants contend, is not dispositive of this dispute under the "neutral principles of law" approach, for this argument, too, was advanced by the dissenters in *Jones v Wolf* (*supra*).

The only affirmative injunctive relief granted by the judgment appealed from herein concerns the local church property. Since the proof in the record, using the "neutral principles of law" approach, provides an ample basis for the trial court's finding that the parties had no intention, at the time this dispute arose, to have defendants obtain control of local church property in the event of a schism, the judgment should be affirmed.

SWEENEY and WEISS, JJ., concur with KANE, J.; MAHONEY, P. J., concurs in a separate opinion; CASEY, J., dissents in an opinion.

Judgment modified, on the law and the facts, by reversing so much thereof as granted plaintiffs injunctive relief and dismissed the counterclaim; complaint dismissed, and judgment directed to be entered in favor of defendants on their counterclaim, permanently enjoining plaintiffs from failing to obey the directives, orders and mandates of the administrative commission in the management and control of plaintiff church, and, as so modified, affirmed, without costs.